## COOPER MANUFACTURING COMPANY *v.* FERGUSON & Another.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Argued October 23, 1884.—Decided March 16, 1885.

The right of a State to prescribe the terms upon which a foreign corporation shall carry on its business in a State has been settled by this court.

A State act which imposes limitations upon the power of a corporation, created under the laws of another State, to make contracts within the State for carrying on commerce between the States, violates that clause of the Constitution which confers upon Congress the exclusive right to regulate that commerce.

A corporation organized under the laws of one State does not, by doing a single act of business in another State, with no purpose of doing any other acts there, come within the provisions of a statute of the latter forbidding foreign corporations to carry on business within it, except upon filing certificates showing their place or places of business, their agents, and other matters required by the statute.

The Constitution of Colorado provided that no foreign corporation should do any business within the State without having one or more known places of business, and an authorized agent or agents in the same upon whom process might be served. The legislature of the State enacted that foreign corporations, before being authorized to do business in the State, should file a certificate with the Secretary of State, and the recorder of the county in which the principal business was carried on, designating the principal place of business and the agent there on whom process might be served. A corporation of Ohio, without filing a certificate, contracted in Colorado to manufacture machinery at its place of business in Ohio, and to deliver it in Ohio. *Held*, that this act did not constitute a carrying on of business in Colorado, and was not forbidden by its Constitution and law.

An act, in execution of a constitutional power, passed by the first legislature after the adoption of the Constitution, is a cotemporary interpretation of the latter, entitled to much weight.

Section ten of article fifteen of the Constitution of the State of Colorado, adopted in 1876, and still in force, provides as follows : " No foreign corporation shall do any business in this State without having one or more known places of business and an authorized agent or agents in the same upon whom process may be served."

To carry into effect this clause of the Constitution, the legislature of Colorado, in the year 1877, in an act entitled " An Act to provide for the formation of corporations," enacted as follows :

" SEC. 23.. Foreign corporations shall, before they are authorized or permitted to do any business in this State, make and file a certificate, signed by the president and secretary of such corporation, duly acknowledged, with the Secretary of State, and in the office of the recorder of deeds of the county in which such business is carried on, designating the principal place where the business of such corporation shall be carried on in this State, and an authorized agent or agents in this State residing at its principal place of business upon whom process may be served ; and such corporation shall be subjected to all the liabilities, restrictions, and duties which are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers."

Section 26 of the same act provided that a failure to comply with the provisions of section 23 should render the officers, agents, and stockholders of the corporation individually liable on all its contracts made while the corporation was so in default.

These provisions of the organic and statute law of the State being in force, the plaintiff in error, which was a corporation organized and existing under the laws of the State of Ohio, and having its principal place of business at Mount Vernon, Ohio, on February 21, 1880, at the county of Larimer, in the State of Colorado, entered into a contract in writing of that date with the defendants, who were citizens of Colorado, by which it was agreed that the plaintiff should sell to the defendants, and deliver to them on the cars at Mount Vernon, in the

State of Ohio, a steam engine and other machinery, in consideration whereof, the defendants were to pay the plaintiff the price stipulated in the contract for such machinery.

This suit was brought by the plaintiff on August 10, 1880, to recover of the defendants damages for their breach of the contract.

The defendants, among other defences, pleaded : First. That when the contract was entered into, the plaintiff had not made and filed the certificate required by § 23 of the act of 1877. Second. That at the time of making the contract, the plaintiff did not have a known place of business in the State of Colorado, and did not have an authorized agent or agents in the State upon whom process might be served.

The plaintiff demurred to both these answers, because they did not state facts sufficient to constitute a defence to the action. Upon the hearing of the demurrer the judges of the Circuit Court were divided in opinion, and the presiding judge being of opinion that the demurrer should be overruled, it was overruled accordingly, and the plaintiff electing to stand by its demurrer, judgment was entered against it dismissing its suit, and for costs. By the present writ of error the plaintiff brought that judgment under review.

The certificate of division of opinion recited the facts above set forth, and stated the question upon which the judges differed to be : " Whether the tenth section of article sixteen " (fifteen) " of the Constitution of the State of Colorado, and the twenty-third section of an act of the general assembly of the State of Colorado, passed in the year A.D. 1877, entitled an ' Act to provide for the formation of corporations,' were, or either of them was, under all the circumstances stated, and the various acts passed by the legislature of Colorado, a bar in this action."

*Mr. Walter H. Smith,* October 23, 1884, argued for plaintiff in error.

No appearance at that hearing for defendant in error.

The court having ordered a reargument, the cause was sub-

mitted, on the 19th day of December, on behalf of plaintiff in error by *Mr. Smith* on his former oral argument and his briefs.

*Mr. Thomas M. Robinson* for defendants in error, at the same time submitted on his brief and his printed argument, in which he contended as follows: It is well settled that the power of a corporation created by the laws of one State, to do business in another, depends upon the comity of the State in which the business is to be transacted. The laws of Colorado in this respect are absolutely prohibitory. Until their require-ments have been complied with, a foreign corporation is with-out power to do any business within the limits of the State. *Utley* v. *Clark-Gardner Mining Co.*, 4 Colorado, 369. In that case the Supreme Court of Colorado says, after holding these provisions of the Constitution and law to be prohibitory, "What meaning and what limits are to be assigned to the statutory phrase 'to do business,' is a matter of elaborate argu-ment by counsel. . . . Taking the language in its ordinary acceptation, a corporation does business by the exercise of its power to contract, its power to acquire and hold property, real and personal, and like powers. By the exercise of these cor-porate powers, it carries on its corporate business in the ordinary meaning of the term. By their exercise it establishes its busi-ness relations, assumes obligations, and acquires rights." It is submitted that this opinion of the State court should be ac-cepted here, as a correct interpretation of these provisions of its laws. It is said by counsel "that the making of such a single isolated contract is not doing business in the State in the sense contemplated by the foregoing provisions." If it is not doing business, how many isolated contracts are required to constitute "any business" within the meaning of the prohibition? The most extensive business that may be carried on is made up of individual transactions or isolated contracts. If the continued and regular business is unlawful, how can any one in the series of contracts of which the continued and regular business is composed be lawful? No sound argument can be made from the hardship of the case. Each State determines its own policy in this respect: and "when the interest or policy of any State

require it to restrict the rule, it has but to declare its will, and the legal presumption is at once at an end." *Bank of Augusta* v. *Earle,* 13 Pet. 519, 590. Colorado has declared its will in unmistakable terms. A contract made by a foreign corporation before complying with the conditions imposed by the statute of the State in which the contract is made, is void. *The Rising Sun Ins. Co.* v. *Slaughter,* 20 Ind. 520; *The Cincinnati M. H. A. Co.* v. *Rosenthal,* 55 Ill. 85; *National Mutual Fire Insurance Co.* v. *Pursell,* 10 Allen, 232; *Roche* v. *Ladd,* 1 Allen, 441; *Thorne* v. *The Traveller's Ins. Co.,* 80 Penn. St. 15; *Bank of British Columbia* v. *Page,* 6 Oregon, 431; *In re Comstock,* 3 Sawyer, 218. It is necessary to give this construction to the act in order to make it harmonize with the provisions of § 26 of the same act, which impose penalties upon officers, agents, and stockholders of foreign corporations, and make them personally liable on the contracts of the corporation. If a statute imposes a penalty on the doing of an act, it is as much a prohibition of the act, as if it were in terms prohibited. *Miller* v. *Post,* 1 Allen, 434, 455; *Allen* v. *Hawks,* 13 Pick. 82; *Ætna Insurance Co.* v. *Harvey,* 11 Wisc. 394; *Thorne* v. *Traveller's Ins. Co.,* 80 Penn. St. 15. Now, as the prohibition which is implied from the provisions of section 26, *supra,* is against the making of any contract (which may certainly be a single and isolated one), and as this section is a part of the same act as section 23, it must be evident that the intent of the lawmakers was that the prohibition implied from each should be co-extensive; and it follows that if a strict construction would so limit the operation of section 23 as to make it fall short of that implied in section 26, it should not be applied. The subject has been considered in several States, always with one result—that a contract made by a foreign corporation in a State, without having first complied with the conditions of the statute permitting it to do business in the State, is void. *In re Comstock,* 3 Sawyer, 218, the question arose upon the statute of Oregon, which is substantially the same as our act, and was discussed so fully by the learned District Judge as to leave little room for further argument. The court held the contract made in Oregon by the foreign cor-

poration, before a compliance with the statutory requirements, to be void. This case is cited with approval by the Supreme Court of Colorado in *Utley* v. *Clark-Gardner Mining Company*, 4 Colo. 369, in discussing the foregoing provisions of the Constitution and statutes of Colorado. The opinion of the Colorado court in Utley's case shows clearly the view they entertain—that the doing of business by the foreign corporation is prohibited, except upon the performance of conditions precedent. The right of the corporation to sue was upheld, because it was not doing business within the meaning of the prohibitory provisions, as they define the terms employed; but their definition does include the exercise of corporate power to contract. The Oregon statute was again considered in *Bank of British Columbia* v. *Page*, 6 Oregon, 431, and the same conclusion reached by the Supreme Court of that State as in the Comstock case, *supra*, and the opinion of Deady, J., in the last-mentioned case adopted as their own. In *The Cincinnati Mutual Assurance Co.* v. *Rosenthal*, 55 Ill. 85, it was held that an action could not be maintained upon a promissory note taken. The same conclusion is reached in *Ætna Ins. Co.* v. *Harvey*, 11 Wisc. 412 (394 Vilas & Bryant's Ed.). In Pennsylvania, the same doctrine prevails. *Thorne* v. *Traveller's Ins. Co.*, 80 Penn. St. 15. It is settled law in Massachusetts, *Williams* v. *Cheney*, 3 Gray, 215, and it is maintained in *Paul* v. *Virginia*, 8 Wall. 168. In none of these cases was it made to appear that the contract in question was other than an isolated and single transaction.

Mr. Justice Woods delivered the opinion of the court. He recited the facts as above stated, and continued:

The right of the people of a State to prescribe generally by its constitution and laws the terms upon which a foreign corporation shall be allowed to carry on its business in the State, has been settled by this court. *Bank of Augusta* v. *Earle*, 13 Pet. 519; *Paul* v. *Virginia*, 8 Wall. 168; *Ducat* v. *Chicago*, 10 Wall. 410. The plaintiff in error does not deny this right, but insists that, upon a proper construction of § 10 of article 15 of the Constitution of Colorado, and of § 23 of the act of 1877, its

contract with the defendants was valid, and that its suit should have been maintained.

As the clause in the Constitution and the act of the legislature relate to the same subject, like statutes *in pari materia*, they are to be construed together. *Eskridge* v. *The State*, 25 Ala. 30.

The act was passed by the first legislature that assembled after the adoption of the Constitution, and has been allowed to remain upon the statute book to the present time. It must therefore be considered as a contemporary interpretation, entitled to much weight. *Stuart* v. *Laird*, 1 Cranch, 299; *Martin* v. *Hunter*, 1 Wheat. 304; *Cohens* v. *Virginia*, 6 Wheat. 264; *Adams* v. *Storey*, 1 Paine, 79, 90.

It must be conceded that if the contract on which the suit was brought was made in violation of a law of the State, it cannot be enforced in any court sitting in the State charged with the interpretation and enforcement of its laws. *Bank of the United States* v. *Owens*, 2 Pet. 527; *Groves* v. *Slaughter*, 15 Pet. 448; *Harris* v. *Runnels*, 12 How. 79; *Brown* v. *Tarkington*, 3 Wall. 377; *Davidson* v. *Lanier*, 4 Wall. 447; *Hanauer* v. *Doane*, 12 Wall. 342; *Wheeler* v. *Russell*, 17 Mass. 258; *Law* v. *Hodson*, 11 East, 300; *Little* v. *Poole*, 9 B. & C. 192; *Thorne* v. *Travellers' Insurance Co.*, 80 Penn. St. 15; *Allen* v. *Hawks*, 13 Pick. 79, 82; *Roche* v. *Ladd*, 1 Allen, 436, 441; *In re Comstock*, 3 Sawyer, 218.

So far as appears by the record the plaintiff had no principal place of business nor any place of business whatever in the State of Colorado, and the making of the contract set out in the complaint was the only business ever done by it, or that it ever purposed to do in that State.

The question, therefore, is whether, upon a true construction of the Constitution and statute, the making of the contract which the plaintiff seeks to enforce was, under the circumstances stated, forbidden.

The contention of the defendants in error is that the prohibition against the doing of any business in the State by a foreign corporation, except upon the prescribed condition, includes the doing of any single and isolated act of business what-

ever. Thus broadly stated, it is clear that the interpretation of the defendants cannot be sustained. In a case involving the construction of the statute, the Supreme Court of Colorado held that a foreign corporation might, without complying with the provisions of the statute, maintain an action in the courts of the State to recover damages for trespass to its real estate. The court said: "The prohibition extends to doing business before the compliance with the terms of the statute. We do not think this an abridgment of the right of a foreign corporation to sue. It extends only to the exercise of the powers by which it may be said to ordinarily transact or carry on its business. To what *extent* the exercise of these powers is affected we do not decide." *Utley* v. *The Clark-Gardner Mining Co.*, 4 Colorado, 369. So it is clear the statute cannot be construed to impose upon a foreign corporation limitations of its right to make contracts in the State for carrying on commerce between the States, for that would make the act an invasion of the exclusive right of Congress to regulate commerce among the several States. *Paul* v. *Virginia*, 8 Wall. 168. The prohibition against doing any business cannot, therefore, be literally interpreted.

Reasonably construed, the Constitution and statute of Colorado forbid, not the doing of a single act of business in the State, but the carrying on of business by a foreign corporation without the filing of the certificate and the appointment of an agent as required by the statute. The Constitution requires the foreign corporation to have one or more known places of business in the State before doing any business therein. This implies a purpose at least to do more than one act of business. For a corporation that has done but a single act of business, and purposes to do no more, cannot have one or more known places of business in the State. To have known places of business it must be carrying on or intending to carry on business. The statute passed to carry the provision of the Constitution into effect, makes this plain, for the certificate which it requires to be filed by a foreign corporation must designate the principal place in the State where the business of the corporation is to be carried on. The meaning of the phrase "to

carry on" when applied to business is well settled. In Worcester's Dictionary the definition is: "To prosecute, to help forward, to continue, as to carry on business." The definition given to the same phrase in Webster's Dictionary is: "To continue, as to carry on a design; to manage or prosecute, as to carry on husbandry or trade." The making in Colorado of the one contract sued on in this case, by which one party agreed to build and deliver in Ohio certain machinery and the other party to pay for it, did not constitute a carrying on of business in Colorado.

The obvious construction, therefore, of the Constitution and the statute is, that no foreign corporation shall begin any business in the State, with the purpose of pursuing or carrying it on, until it has filed a certificate designating the principal place where the business of the corporation is to be carried on in the State, and naming an authorized agent, residing at such principal place of business, on whom process may be served. To require such a certificate as a prerequisite to the doing of a single act of business when there was no purpose to do any other business or have a place of business in the State, would be unreasonable and incongruous.

The case of *Potter* v. *The Bank of Ithaca*, 5 Hill, 490, tends to support this conclusion. The charter of the bank provided that its operations of discount and deposit should be carried on in the village of Ithaca, and not elsewhere. The cashier discounted a note in the city of New York, for the purpose of securing a demand due the bank, and the fact that the note was discounted in New York City was set up as a defence to a suit on the note. In giving judgment for the bank, Nelson, Chief Justice, said, the statute " obviously relates to the regular and customary business operations of the bank, and does not apply to a single transaction like the one in question." A similar ruling was made in *Suydam* v. *The Morris Canal and Banking Company*, 6 Hill, 217. See also *Graham* v. *Hendricks*, 22 La. Ann. 523.

We base the conclusion that the demurrer to the defendant's answer should have been sustained upon the interpretation we have given to the Constitution and statute, and do not find it

necessary to decide whether their provisions invade the exclusive right of Congress to regulate commerce among the several States. We have examined all the cases cited by the defendants to suport their interpretation.* In none of them was the statute construed, similar in its language or provisions to the Constitution or statute under consideration, and the cases can have no controlling weight in the present controversy.

We are of opinion that there was error in the judgment of the Circuit Court. The judgment must therefore be reversed, and the cause remanded for further proceedings, in conformity with this opinion;

*And it is so ordered.*

MR. JUSTICE MATTHEWS.

Mr. Justice Blatchford and myself concur in the judgment of the court announced in this case, but on different grounds from those stated in the opinion.

Whatever power may be conceded to a State, to prescribe conditions on which foreign corporations may transact business within its limits, it cannot be admitted to extend so far as to prohibit or regulate commerce among the States; for that would be to invade the jurisdiction which, by the terms of the Constitution of the United States, is conferred exclusively upon Congress.

In the present case, the construction, claimed for the Constitution of Colorado, and the statute of that State passed in execution of it, cannot be extended to prevent the plaintiff in error, a corporation of another State, from transacting any business in Colorado, which, of itself, is commerce. The transaction in question was clearly of that character. It was the making of a contract in Colorado to manufacture certain machinery in Ohio, to be there delivered for transportation to the purchasers in Colorado. That was commerce; and to

---

* *In re Comstock,* 3 Sawyer, 218; *Bank of British Columbia* v. *Page,* 6 Oregon, 431; *Thorne* v. *The Travellers' Ins. Co.,* 80 Penn. St. 15; *Roche* v. *Ladd,* 1 Allen, 441; *The Rising Sun Ins. Co.* v. *Slaughter,* 20 Ind. 520; *National Mut. Fire Ins. Co.* v. *Pursell,* 10 Allen, 231; *Cincinnati Mutual Assurance Co.* v. *Rosenthal,* 55 Ill. 85; *Ætna Insurance Co.* v. *Harvey,* 11 Wisc. 394, Vilas & Bryant's Ed. 412.

prohibit it, except upon conditions, is to regulate commerce between Colorado and Ohio, which is within the exclusive province of Congress. It is quite competent, no doubt, for Colorado to prohibit a foreign corporation from acquiring a domicil in that State, and to prohibit it from carrying on within that State its business of manufacturing machinery. But it cannot prohibit it from selling in Colorado, by contracts made there, its machinery manufactured elsewhere, for that would be to regulate commerce among the States.

In *Paul v. Virginia*, 8 Wall. 168, the issuing of a policy of insurance was expressly held not to be a transaction of commerce, and, therefore, not excluded from the control of State laws; and the decision in that case is predicated upon that distinction. It is, therefore, not inconsistent with these views.